IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL T. LEWIS, SR
and PAULINE S. LEWIS                                                            PLAINTIFFS

VS.                                                       CIVIL ACTION NO.: 4:24-cv-76-MPM-JMV

ATMOS ENERGY CORPORATION                                                         DEFENDANT

**ORDER GRANTING MOTION TO COMPEL, GRANTING IN PART AND DENYING
IN PART MOTION TO EXTEND CMO DEADLINES, AND
DENYING MOTION FOR PROTECTIVE ORDER**

This matter is before the Court on three motions: Plaintiffs' contested Motion to Compel Discovery filed April 2, 2025 (Dkt. 39); Plaintiffs' unopposed Motion to Extend the Case Management Order Discovery Deadline filed April 10, 2025 (Dkt. 41); and Defendant's contested Motion for Protective Order filed April 14, 2025. (Dkt. 42). Because the three motions are so interrelated and rely principally on the same legal and factual arguments, I will rule on them separately, but in a single opinion, as follows:

**Background and Procedural History**

This litigation follows what the parties generally agree was a dispute over the placement of Defendant's natural gas pipeline through farmland owned by Plaintiffs, and the pre-suit settlement of that dispute via a Release and a Right of Way and Easement Agreement. Specifically, it appears from the record that Defendant owned a natural gas pipeline originally constructed in 1956 which traverses Plaintiffs' land East of McKee Road for approximately 7,270 feet, although Defendant was alleged to have not had an easement permitting the pipeline at that location. Apparently, realizing the presence of the pipeline on their property when part of it became exposed to the surface sometime in 2023, the Plaintiffs contacted Defendant to complain of the pipeline's

1

alleged unauthorized and dangerous placement. In a pre-suit mediation session in late 2023/early 2024, the parties agreed that Plaintiffs would grant Defendant an easement and a release of all claims in exchange for which Defendant would "repair or replace" its pipeline and pay Plaintiffs a confidential sum. The Release Agreement signed by the parties on February 2, 2024,[1] provides, for purposes here, in relevant part:

> …Releasors have a disputed claim arising out of the Incident (as defined herein) which is the basis for this Agreement…
>
> The Incident includes Atmos' alleged trespass by operation of a natural gas pipeline on Releasors' property without Releasors' knowledge or permission…
>
> …
>
> Releasors do hereby fully, completely, and finally release all claims…This release includes but is not limited to claims for trespass, nuisance, and any other claim related to the presence of Atmos Energy's pipeline on Releasors' property.
>
> Releasors shall execute the Right-of-Way and Easement proposed by Releasor conveying to Releasor a Right-of-Way and Easement over a certain 3.34-acre tract or parcel of [Plaintiffs'] land …
>
> That Right-of-Way and Easement is attached to this Agreement as Exhibit "1" and incorporated here by reference…
>
> **Releasee shall undertake all construction and engineering activities reasonably necessary to repair or replace the natural gas pipeline currently installed in the easement and right-of-way conveyed by the Right-of-Way and Easement…**
> **Releasee shall remove any exposed natural gas pipeline abandoned from any repair or replacement, at the time of the repair or replacement, on said Right-of-Way and Easement. Releasee shall use reasonable efforts to complete the work described in this paragraph on or before April 1, 2024,** except that Releasee shall incur no liability or be deemed to have breached the terms of this Agreement for not completing the necessary work on or before April 1, 2024, because of acts beyond Releasee's

---

[1] While the date on the first page of the Absolute General Release and Settlement Agreement (Dkt. 1-8) incorrectly states that it is being executed on February 2, 2023, the parties agree that the document was executed on February 2, 2024, which is the date provided above their signatures (Dkt. 1-8 at 6), as well as the date provided by the notaries (Dkt. 1-8 at 8).

2

> reasonable control, including but not limited to the following force majeure events:…

(Dkt. 1-8) (emphasis added).

The Right of Way and Easement/Agreement attached to the Release Agreement recites, in relevant part here, as follows:

> Unto the said Grantee, its successors and assigns, a perpetual right-of-way and easement for the transportation and distribution of natural gas, in, across, under, over and through the following described property in Coahoma County, State of Mississippi, hereinafter referred to as the "Property, and described as follows to wit:
>
> Said right-of-way and easement being a portion of Grantors' Property described in Deed Book 775, at Page 551 of the records of the Chancery Clerk of Coahoma County, State of Mississippi, and being twenty (20) feet in width, including but not limited to the right to install, construct, reconstruct, inspect, operate, maintain, alter, repair, change the size of replace and remove, abandon in-place and/or remove at will, in whole or in part, relocate along the same general direction relocate in the same relative position to any adjacent road il and as such a road is widened in the future…
> This grant shall carry with it the rights or reasonable ingress and egress to and from said Properly. including the right to reasonably and temporarily utilize adjoining property of Grantor during construction. repair. and maintenance of the Pipeline with the right to use existing roads for the purpose of constructing. operating. inspecting. repairing. and maintaining the Pipeline. and the right of removal or replacement of the same with either like or different size or type pipe. facilities. or equipment. whether larger or smaller. or other similar gas pipeline construction at will. either in whole or in part.
>
> TO HAVE AND TO HOLD the above-described rights and casements together with any other rights necessary to operate and maintain the Pipeline over and across the above described Property unto the said Grantee. its successors and assignees.
> …
>
> **The Pipeline shall be initially installed by Grantee to a depth of at least 48 inches below the surface of the ground.** All construction, maintenance and repairs which shall be made to the Pipeline shall be done at times suitable to Grantee and, if possible,

3

>> at such times as will least interfere with the agricultural use of the Property ….

(Dkt. 1-9) (emphasis added).

According to Plaintiffs, following the execution of the Release and the Right of Way and Easement Agreement, Defendant neither repaired nor replaced the offending pipeline, but instead "scabbed" a new section of pipe about 1220' in length at an unknown depth into the mid-section of the old original 7270' pipe, leaving the old 1250' replaced section of pipe in place, lying alongside the newly spliced 1250' section. Stated differently, Plaintiffs contend the new 1250' section lies approximately parallel to the old pipe at an unknown depth and location. The new section of 1250' is now connected, according to Plaintiffs, into the middle section of what they contend remains an old, rusty, shallow pipe of 7,270 feet in total length. Thus, Plaintiffs allege more than a mile of the old pipe remains underneath Plaintiffs' soil and continues to transmit high pressure gas. And though the Release also required Defendant to use "reasonable efforts" to complete the work on the pipeline before April 1, 2024, apparently Defendant did not complete construction until sometime in May 2024 resulting in Plaintiffs having to reimburse their farm tenant a pro rata share of the farm lease payment for 2024.

The Defendant, for its part, agrees that as a result of the aforementioned settlement negotiations, the Plaintiffs agreed to execute a Right-of-Way and Easement authorizing the pipeline in its existing location in return for Defendant's agreement to pay a confidential sum of money and "repair or replace the natural gas pipeline" in the right-of-way. However, Defendant contends it *did* make such repair or replacement. Further, it contends that the release agreement did not obligate it to remove any abandoned portion, namely the replaced 1250' of the original pipeline, because it was not left "exposed" as described in the release. It also contends it used

4

"reasonable efforts to complete the work…on or before April 1, 2024," but that Plaintiffs were themselves responsible for the delay in completion.

This suit followed on August 22, 2024. In it, Plaintiffs brought the following claims against Defendant: Breach of Contract (the Release and Right-of-Way and Easement Agreement), tortious breach of contract, quiet title relief, trespass, breach of covenant of good faith and fair dealing, tortious interference with contract, specific performance, negligence, negligence per se, and nuisance. Plaintiffs requested damages and injunctive relief.

After suit was filed, a Case Management Order was entered on November 4, 2024, setting, of relevance here, a Plaintiffs' expert deadline of February 5, 2025; a Defendant expert deadline of March 5, 2025; a discovery deadline of May 5, 2025, and a motion deadline of June 5, 2025. A jury trial was set for December 8, 2025.

Then, on December 11, 2024, Plaintiffs propounded, to Defendant, among others Interrogatory 18 seeking data on the pipeline's location and depth as follows:

> "In paragraph 15 of your answer to the complaint you deny that the pipeline is shallow as follows: 'Atmos Energy admits that it abandoned approximately 1,220 feet of the previously existing pipeline buried in place...but denies the sentence's allegation that the pipeline is 'shallow',' Please identify the depth of the natural gas pipeline that is operational as well and the depth of the pipeline that was abandoned in ten-foot increments; identify all persons with knowledge of your response to this interrogatory and documents related to this allegation and your response."

(Dkt. 39-1).

Atmos responded on January 10, 2025, as follows:

> "Response: Atmos Energy objects that this interrogatory is impermissibly compound, such that it consists of at least three interrogatories. Atmos Energy also objects that this Interrogatory would require the disclosure of confidential, proprietary and/or Sensitive Security Information and/or Protected Critical

5

Infrastructure Information absent a protective order and/or confidentiality order."

(Dkt. 42-1).

Plaintiffs also propounded, on the same date, a corresponding Request for Production, seeking documents reporting the pipeline depth and location as follows:

"Request No. 18: Produce all documents related to the allegations contained in paragraph 15 of your answer to the complaint and your answer to Interrogatory no. 18."

Atmos timely responded:

"Atmos Energy also objects that this Interrogatory would require the disclosure of confidential, proprietary and/or Sensitive Security Information absent a protective order and/or confidentiality order. Atmos Energy will agree to provide no documents in response to this Request absent a confidentiality order."

Thereafter, Plaintiff timely filed their designation of experts on February 6, 2025 (Dkt. 36), and Defendant did so on March 6, 2025 (Dkt. 37). On April 2, 2025, Plaintiff filed the instant motion to compel Defendant to fully respond to Interrogatory 18 and Request for Production 18, above (Dkt. 39). Before any response was due to Plaintiffs' Motion to Compel, Plaintiffs also moved on April 19, 2025, to extend the discovery deadline (Dkt. 41). The motion to extend recites it is unopposed, but it is confusing in terms of the relief requested. First, it seeks to extend the discovery deadline until June 30, 2025, (Dkt. 41 at 1.) Later, it recites: "Plaintiffs pray that the discovery deadline is extended to require Atmos to identify the location and depth of both the abandoned pipe and operating pipe on the Plaintiffs' property within thirty days of the entry of this motion . . . , allowing the Plaintiffs' experts to finalize their opinions, which will be supplemented

6

before a discovery deadline." (Dkt. 41 at 5).² Finally, in the same motion, Plaintiffs assert: "The Court should extend the discovery deadline to a reasonably sufficient time to allow the Plaintiffs' experts to calculate the Plaintiffs' damages. Plaintiffs' counsel estimates that 30 days following their experts receiving the depth and location data will be sufficient to calculate the damages." (Dkt. 41 at 4).

According to the motion to extend the discovery deadline, it is sought by Plaintiffs so that their two previous expert designations can be supplemented before the end of discovery to add a calculation of damages incurred due to Defendant's alleged failure, in breach of their pre-suit Release and Right of Way and Easement Agreement, to remove the abandoned portion of the subject pipeline and to place the operating pipeline at a suitable depth. (Dkt. 41).³

Four days later, on April 14, 2025, while responses to the Motion to Compel and the Motion to Extend the Discovery Deadline were not yet due, Defendant moved for a protective order. In the motion, Defendant seeks:

> [A] Protective Order concerning certain discovery sought by Plaintiff in this matter, given that the interrogatories and requests for production at issue ask for detailed information about the depth and location of an Atmos Energy pipeline. These materials are especially sensitive, and Atmos Energy is obligated by federal law to protect them from public disclosure. Atmos Energy will agree to provide them to Plaintiffs for use in this case, but only subject to a protective order sufficient to maintain their confidentiality. The Court should exercise its authority under Rule 26(c) of the Federal Rules of Civil Procedure to enter such an Order.

---

² There is presumably an error in the foregoing, and it was intended to state "within thirty days of the entry a favorable *order on the* motion to compel or, alternatively, it was intended to mean "within thirty days of the entry an *order* on this motion."

³Improperly buried in the motion to extend the discovery deadline is an additional vague suggestion that the Court enter an order under Rule 26(c) excusing the Plaintiffs' damages expert report until such time as Atmos provides the depth and location of the pipeline. To the extent Plaintiffs seek to extend their expert designation deadline, they should file a motion and supporting brief clearly setting forth the relief sought. "Judges are not like pigs, hunting for truffles buried in briefs." *Pittman v. Garner*, 20 F.3d 1171 (5th Cir. 1994), citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).

7

(Dkt. 42 at 1).

Specifically, by its motion, Defendant seeks to have an order pursuant to Fed. R. Civ. P. 26(c) entered to protect the information requested by Plaintiffs in Interrogatory 18 and Request for Production 18 (recited above in reference to Plaintiffs' Motion to Compel) and—though not addressed in Plaintiffs' pending Motion to Compel—Defendant also seeks a protective order to "ensure confidentiality" of any substantive response to Interrogatories 23 and 24.[4] And, though the Motion for Protective Order itself recites it is to protect the asserted confidentiality of information regarding the depth and placement of the 7270' pipeline and the abandoned 1250' section, elsewhere buried in the motion, and in the proposed protective order itself, Defendant seeks to have the Protective Order cover literally any documents/information it marks as "confidential."

As for the memo in support of the Motion for Protective Order, Defendant asserts that neither the depth or placement of the subject pipeline is "….,needed to resolve a dispute over a delay of a few weeks in completing the work or whether Atmos Energy complied with the following sentence: [Atmos Energy] shall **remove any exposed natural gas pipeline abandoned**

---

[4] Request No. 23: Produce all documents related to devices, practices, and depth of burial [that] have been utilized by you to prevent either the operational natural gas pipe or the abandoned pipe from being exposed to the surface.

Response: Atmos Energy objects that this Request is impermissibly compound, such that it consists of multiple requests. Atmos Energy also objects that this Request would require the disclosure of confidential, proprietary and/or Sensitive Security Information absent a protective order and/or confidentiality order. Atmos Energy will agree to provide no documents in response to this Request absent a confidentiality order.

Request No. 24: Please produce all data or information concerning the depth of the abandoned pipe and the newly installed pipe.

Response: Atmos Energy objects that this Request is impermissibly compound, such that it consists of two requests. Atmos Energy also objects that this Request would require the disclosure of confidential, proprietary and/or Sensitive Security Information absent a protective order and/or confidentiality order. Atmos Energy will agree to provide no documents in response to this Request absent a confidentiality order.

8

**from any repair or replacement,** at the time of the repair or replace, on said Right-of-Way and Easement." (Dkt. 43 at 2) citing (Dkt. 1-8) (emphasis added in memorandum).

In addition, Defendant argues the depth and location information concerning the pipeline is protected under federal law as being Sensitive Security Information ("SSI") and critical infrastructure facilities (CIF) protected by 49 CFR §§ 15.5(b). (shielding "[a]ny vulnerability assessment directed, created, held, funded, or approved by the DOT, DHS, or that will be provided to DOT or DHS in support of a Federal security program"); 15.3 (defining "[v]ulnerability assessment" as "any review, audit, or other examination of a…pipeline…to determine its vulnerability to unlawful interference, whether during the conception, planning, design, construction, operation, or decommissioning phase"); 1520.5(b)(5) (providing similar protecting to vulnerability assessments). Defendant also relies on 2008 TSA memo observing that "even simple maps of pipeline systems that are very detailed can provide critical information to terrorists,." as well as a 2003 TSA memo allegedly urging protection of maps containing "information which would indicate vulnerabilities or security measures."

On April 16, 2025, Defendant timely filed its response in opposition to the Motion to Compel (Dkt. 45) asserting that though it takes issue with the relevance of the pipeline depth and placement to any issue concerning its obligations under the Release and the Right of Way and Easement Agreement, it has no objection to producing the information sought in the Motion to Compel, provided the protective order it seeks is granted. As for its assertion that the depth of any of the existing pipeline is irrelevant to whether Defendant breached the Release and Right -of - way and Easement Agreement, Defendant again takes the position that nothing in either agreement obligates them to remove any abandoned pipeline other than that which was "exposed." (Dkt. 46 at 4). Further, they contend nothing in the agreement obligates them to maintain the pipeline at

9

any particular depth for any given period of time, only that the line "shall be initially installed…to a depth of at least 48 inches below the surface of the ground." *Id.* Defendants also contend "Plaintiffs have failed to identify a depth requirement in contract or law that's relevant to their claims." *Id.* In short, it asserts the discovery requests at issue "amount to a fishing expedition." *Id.*

No reply to the response to the Motion to Compel was filed by Plaintiff, and the time for doing so has now run. On April 23, 2025, Defendant filed its response to the Motion to Extend the Discovery Deadline, stating it was not opposed. (Dkt. 47). Then, on April 25, 2025, Plaintiff filed its opposition to Defendant's Motion for Protective Order. (Dkt. 48). Therein, Plaintiffs argue that the depth and location of the subject pipeline is relevant to their claims.[5]

Plaintiff also argues that Defendant has not demonstrated with the requisite specificity, a basis to seal this information from public view. In support thereof, among other authorities, it cites *Sec. & Exch. Comm'n. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) for the proposition that the Fifth Circuit has held that a district court abuses its discretion in decisions to seal or unseal documents in two circumstances: when it fails to identify and apply the proper legal standards, or when it fails to provide sufficient reasons for its decision to enable appellate review. (Dkt. 49 at 6). "(T)he requisite degree of specificity will vary from case to case, but in most cases, a district court should at least "articulate any reasons that would support sealing [a judicial document]." *Id.*, citing *Van Waeyenberghe*, 990 F.2d at 849. Plaintiffs argue that the Defendant has not specified any sufficient basis for sealing the pipeline depth and location information. In particular, Plaintiffs assert Defendant has not demonstrated that the subject pipeline is SSI or CIF, and Defendants'

---

[5] From the foregoing motion practice, it appears to the undersigned that the parties have more than a dispute over whether certain provisions of the Release and Right of Way and Easement Agreement were complied with—they apparently also disagree over what the agreements required to begin with. For example, Atmos takes the position that it is required only to remove abandoned line that was exposed, and any new line is only required initially be set at least 48 inches below the surface. On the other hand, it appears that Plaintiff contends all abandoned line was to be removed and all of the line—old and new—must be at least 48 inches below the surface. This disagreement is apparently the genesis for the dispute over the relevance of the depth of the pipeline.

10

reliance on the above referenced 2008 TSA memo is meritless, as that memo was retracted by the issuing agency immediately. Moreover, pipeline locations are disclosed nationwide on readily available online publications.

**Law and Analysis**

   A. The Motion to Compel

The Court finds that the motion to compel a responsive answer to Interrogatory No. 18 and Request for Production No. 18 is due to be granted. Despite a disagreement between the parties over the degree to which the depth and placement of the pipelines are relevant to the claims in this case, I find this information is sufficiently relevant and properly discoverable pursuant to Fed. R. Civ. P. 26. It should be produced, subject to the qualification set forth below, within two (2) business days of entry of this Order.

   B. The Protective Order

As for the proposed protective order itself, that motion is denied. The proposed, but inaccurately described "agreed" protective order, fails to comply with Local Uniform Civil Rule 79, including, by way of example only, that it fails to contain the language mandated for inclusion in such protective orders.[6]

It also improperly purports to govern the exhibition of evidence at hearings, trials, and in motions, and improperly conflates the concepts of sealing with respect to motion practice with that of utilization of documents in discovery for purposes of trial preparation. Moreover, it fails to address the potential use of documents in motion practice in the event a motion to seal the same

---

[6] (g) Agreed Protective Orders. Protective orders entered by agreement of the parties to facilitate discovery must contain the following language: "This protective order is not a judicial determination that any specific document or information designated by a party as confidential is subject to sealing under L.U. C IV. R. 79 or otherwise. In order for any document or information to be filed under seal, a party must first file a motion to file the document or information under seal in accordance with the procedure set forth in L.U. C IV. R. 79." L.U. Civ. R. 26(g).

is, in fact, denied by the court. And it purports to have the court find, in the abstract, that documents vaguely described and dealing with pipeline location and depth are, in fact, "confidential."

The federal rules do not themselves limit the use of discovered documents or information. *Harris v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir. 1985). Rule 26(c) does, however, afford district courts the ability to impose limits. *Id.* Rule 26(c) permits courts to enter orders protecting a party "range of motion annoyance, embarrassment, oppression, or undue burden and expense...." An order may be entered "(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...." So, while responses to written discovery requests are not public records, courts may constitutionally restrict the distribution of information obtained through discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33-34 (1984). If the party from whom discovery is sought shows "good cause," the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained. *Harris*, 768 F.2d at 684; *see also* 8 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2035, 2036, at 264-65, 267-69 (1970); 4 J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.75 (1984).

In this case, to the extent that Defendant is alleging that there is a public interest in not disclosing documents that relate to the location and depth of pipelines to the general public, it must show good cause for the Court to restrict distribution of that information obtained through discovery. Defendant must provide the Court with an affidavit that sets out facts establishing: (1) the harm that would result from disclosure; (2) whether the information is publicly available; and (3) the procedures in place to protect the information from public disclosure. Similarly, if Defendant maintains that a document should not be subject to disclosure because it contains

12

confidential commercial information, it must provide the Court with an affidavit that sets out facts establishing (1) that the information is of the type that Defendant and its competitors protect from disclosure; (2) the harm that would result from disclosure; and (3) the procedures Defendant has in place to protect the information from public disclosure. Defendant will have seven (7) business days from today to re-urge its motion for a protective order, provided it supplies the foregoing in support thereof. Plaintiffs will then have four (4) business days to respond. In the event Defendant does not timely move to re-urge its protective order or the court denies the same, Plaintiffs shall then be free to disclose the documents produced to them in response to interrogatory 18 or request for production 18 to those other than the parties, counsel, experts, and their support staff. **Until such time, if any, shall occur, Plaintiffs may not disclose the subject documents to those other than the foregoing.**[7]

   C. Motion to Extend CMO Deadlines

With regard to the motion to extend CMO deadlines, the Court finds that Plaintiffs shall have through June 2, 2025, to supplement their expert designations, and Defendant shall have through June 16, 2025, to supplement its expert designation. The discovery deadline shall be moved to July 8, 2025, and dispositive and Daubert motions shall be filed by August 8, 2025. As the parties were cautioned during the telephonic status conference on May 9, 2025, these deadlines shall not be extended further absent a trial continuance.

**Conclusion**

For the foregoing reasons, the Plaintiffs' contested Motion to Compel Discovery filed April 2, 2025 (Dkt. 39) shall be and is hereby **GRANTED**; Plaintiffs' unopposed Motion to Extend the Case Management Order Discovery Deadline filed April 10, 2025 (Dkt. 41) shall be **GRANTED**

---

[7] This Order does not address whether particular documents that are offered in support of motion practice may be sealed on the docket pursuant to L.U. Civ. R. 79.

**IN PART and DENIED IN PART** in accordance with paragraph C above; and Defendant's contested Motion for Protective Order filed April 14, 2025, (Dkt. 42) shall be **DENIED without prejudice**.

**SO ORDERED**, this the 12th day of May, 2025.

<u>/s/ Jane M. Virden</u>
**UNITED STATES MAGISTRATE JUDGE**